NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ASCENCEA, L.L.C., successor in interest to Affiliated Mortgage Protection, L.L.C.<br><br>Plaintiff,<br><br>v.<br><br>RANDALL J. ZISOOK, et al.<br><br>Defendants. | Civ. No. 08-5339 (DRD)<br><br>**O P I N I O N** |

*Appearances by:*

KLAFTER & MASON, L.L.C.
by: Gary L. Mason, Esq.
Manalapan Corporate Plaza
195 Route 9 South, Suite 204
Manalapan, New Jersey 07726

   *Attorney for Plaintiff*

McCARTER & HIGGINS
by: George W. C. McCarter, Esq.
48 Drs. James Parker Boulevard
Red Bank, New Jersey 07701

   *Attorneys for Defendant Malcolm Browne*

**DEBEVOISE, Senior District Judge**

Plaintiff, Ascencea, L.L.C., successor in interest to Affiliated Mortgage Protection, L.L.C. ("Affiliated"),[1] instituted this action against its former employees claiming, among other things, that they violated their respective confidentiality and non-compete agreements by leaving to work for a competing company, Peoples Protection Group, Inc. ("PPG"), which was started by Defendant Randall Zisook. Ascencea asserts that Defendants Zisook and Seifert orchestrated a plan to recruit Ascencea's managers and sales force to work for PPG and to utilize Ascencea's confidential information, including client lists and business methods, to divert Ascencea's business to PPG. It further contends that all of the Defendants participated in this scheme on some level. Presently before the court is Defendant Malcolm Browne's Motion for Summary Judgment. For the reasons set forth below, Browne's Motion will be granted and Ascencea's Complaint will be dismissed with prejudice with respect to said Defendant.

## I. BACKGROUND

Ascencea is engaged in selling a certain life insurance product known as mortgage protection insurance, which protects mortgagors in the event they die before their mortgage is fully paid. The company conducts its business using contracted agents operating in various territories throughout the United States. It conducts its own marketing by sending a specially designed "lead letter" to prospective purchasers who are asked to respond to the mailing if they are interested in buying insurance. All responses are logged in a database and the "leads" are forwarded to regional managers who charge particular agents with securing sales from those leads.

---

[1] Defendant Malcolm Browne argues that Ascencea is not the legal successor to Affiliated but the court finds it unnecessary to reach a decision on that point and, for the sake of simplicity, will refer to Ascencea and Affiliated collectively, as "Ascencea", as if they are one and the same.

2

Ascencea obtains its prospective client lists from mailing list vendors. It asserts that its method for selecting vendors is a sophisticated technique that took many years to develop. It also uses a training program and related materials to instruct its agents on how to effectively close a sale. Given the time, effort, and expense involved in developing its leads and business practices, Ascencea considers its leads and its methods for obtaining such leads, as well as its training program and materials, to be valuable trade secrets. It also invests substantial effort in training its sales force and thus considers each salesperson to be a valuable asset. Therefore, Ascencea requires its agents, managers, and consultants to execute confidentiality and non-compete agreements.

Browne began working for Ascencea in June of 2007 as an independent agent selling life insurance throughout Ascencea's Texas territory. On July 27, 2007, he signed a confidentiality and non-compete agreement entitled "Agent Consulting Agreement" (the "Agreement"). Notably, Ascencea did not execute the Agreement.

The Agreement states, in pertinent part:

11.   <u>Confidentiality Covenant</u>.

>   (a)   In the discharge of the Consultant's services hereunder, the Consultant acknowledges that it will have access to information of the Company that is confidential, private or proprietary including, but not limited to, the Company's business methods, leads, lead system, telephone script, marketing presentations and other materials developed in connection with its relationship with the Company (the "Confidential Information").
>
>   (b)   The Consultant acknowledges that disclosure of the Confidential Information will cause substantial harm that would materially adversely affect the Company's business operation and ability to compete. The Consultant covenants and agrees that it will not release, duplicate or disclose the Confidential Information to any third parties without the advance express written consent of the Company. The Consultant will not use the name, trademarks or trade names (whether registered or not) of the Company or any of its corporate affiliates in publicity releases or advertising or in any other manner, including customer lists, without the prior written consent of the Company.

    (c)    The Consultant further covenants and agrees that it will not release, duplicate, disclose to any third party or use for its own benefit any leads provided to the Consultant by the Company. Any disclosure of the leads provided by the Company to the Consultant by the Consultant to any third party will be deemed a material breach of the terms of this Agreement. In the event that it is found that the Consultant has disclosed any leads or marketing practices provided by the Company to a third party, the Consultant will be obligated to reimburse the Company for all leads provided to the Consultant by the Company over the course of this Agreement, regardless of whether they have been provided to a third party, at $20.00 per lead.

. . .

12.    <u>Non-Competition Covenant</u>.

    (a)    Consultant acknowledges that during its relationship with the Company it will be privy to Confidential Information and will be the beneficiary of knowledge and training gained as a result of its relationship with the Company. In consideration thereof, and in consideration of the Company entering into this Agreement, Consultant agrees that so long as this Agreement is in effect, and for a period of twenty-four (24) consecutive calendar months thereafter, Consultant will not, whether directly or indirectly, except with the prior written consent of the Company, do any of the following:

        (i)    Solicit work from or render services to, either directly or indirectly, for its own benefit or the benefit of another, any of the Company's agents, agencies or clients for whom it has performed services on behalf of the Company;

        (ii)    Hire, either directly or indirectly, any employee of the Company, in any capacity whatsoever, nor attempt to induce any employee of the Company to leave the employ of the Company and or induce any employee past or present to furnish the Consultant with information regarding vendors, agents or agencies, marketing materials, issued or pending business or any of the Company's marketing or sales practices; or

        (iii)    Reproduce or copy any of the Company's lead materials. Mail any direct mail solicitations of a similar content to those used by the Company. Use or copy any of the Company's sales materials flip charts, presentations or any materials whatsoever which originated from Consultant's association with the Company whether or not such materials are of a proprietary nature.

. . .

    (c)    Consultant further acknowledges and agrees that the restrictions contained in this Section 12 are for the sole purpose of protecting the legitimate

business interests of the Company. Upon termination of this Agreement, the Consultant is free to pursue other endeavors and may engage its services in the field of mortgage insurance and related products, so long as it is not in violation of the provisions in this Section 12. Nothing contained in this Agreement will be interpreted or construed as a restriction prohibiting the Consultant from earning a living, generally, or from engaging its services in the field of mortgage insurance and related products, specifically.

The following facts are undisputed:

> Browne did not take any confidential or proprietary information or property of Afilliated or Ascencea with him when he began work at PPG. Browne never disclosed to any person any confidential or proprietary information belonging to Afilliated or Ascencea. He never used or duplicated any proprietary business operation method or procedure belonging to Afilliated or Ascencea. He never solicited or recruited any person affiliated with Affiliated or Ascencea to leave his or her position to become affiliated with PPG. (Def's Statement of Facts ¶ 10, admitted by Ascencea in Pl's Statement of Facts ¶ 10).

. . .

> During his entire affiliation with PPG, Browne never received any earnings from a previous client of Affiliated or Ascencea. (Def's Statement of Facts ¶ 13, admitted by Ascencea in Pl's Statement of Facts ¶ 13).

## II. DISCUSSION

**A. Standard of Review:** Summary judgment is proper where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law." Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party does not bear the burden of proof at trial, the moving party may discharge its

burden by showing that there is an absence of evidence to support the non-moving party's case. Id. at 325. If the moving party can make such a showing, then the burden shifts to the non-moving party to present evidence that a genuine fact issue exists and a trial is necessary. Id. at 324. In meeting its burden, the non-moving party must offer specific facts that establish a material dispute, not simply create "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

In deciding whether an issue of material fact exists, the Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The Court's function, however, is not to weigh the evidence and rule on the truth of the matter, but rather to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If there are no issues that require a trial, then judgment as a matter of law is appropriate. Id. at 251-52.

**B. Plaintiff's Complaint:** Ascencea's Second Amended Verified Complaint (the "Complaint") asserts six separate counts against Browne. Count 1 seeks injunctive relief enjoining Browne, and others, from "(i) selling the mortgage life insurance product; (ii) soliciting Ascencea's Agents, Managers, employees and sales staff; [and] (iii) using any of Ascencea's confidential and proprietary material . . . ." Count 2 asserts a Breach of Contract claim for breach of the Agreement. Count 3 alleges Breach of the Implied Covenant of Good Faith and Fair Dealing. Count 4 alleges Unfair Competition. Count 5 seeks an order directing an accounting of PPG's records and funds. Count 6 alleges Conversion and Misappropriation of Confidential Information and Trade Secrets.

Despite the numerous claims asserted against Browne, the thrust of Ascencea's case against him seems to be the Breach of Contract claim. Indeed, Ascencea devotes the entirety of

its brief to this issue, focusing mainly on two ancillary arguments. First, Ascencea argues that the Agreement is enforceable despite the fact that Ascencea's predecessor did not sign it. Second, Ascencea argues that the Agreement was properly assigned to it from its predecessor and can therefore be enforced by Ascencea. However, it is unnecessary to reach a decision on these issues because, even if the Agreement is enforceable, it is clear that Browne did not breach the terms of the Agreement.

As detailed above, the terms of the Agreement prohibit Browne from (i) soliciting work from Ascencea's agents and clients; (ii) inducing Asencea's employees to leave the company or turn over confidential information; and (iii) using or reproducing any of Ascencea's confidential information. But Ascencea concedes that Browne did not do any of these things. In its Statement of Facts, Ascencea freely admits that "Browne did not take any confidential or proprietary information . . . . Browne never disclosed . . . any confidential or proprietary information . . . . He never used or duplicated any proprietary business operation method or procedure belonging to Afilliated or Ascencea. He never solicited or recruited any person affiliated with Affiliated or Ascencea to leave his or her position. [And he] never received any earnings from a previous client of Affiliated or Ascencea. (Def's Statement of Facts ¶¶ 10 and 13, admitted by Ascencea in Pl's Statement of Facts ¶¶ 10 and 13).[2] Thus, there is no issue as to any material fact.

Ascencea's only argument is that Browne "became aligned with PPG and began selling the exact same product he sold while an independent agent with Ascencea." (Pl's Br. 4). But that is not a breach of the Agreement. The Agreement does not prohibit Browne from working for a competing company, nor does it prohibit him from selling life insurance. In fact, the

---

[2] While the facts clearly demonstrate that Browne never recruited any of Ascencea's employees, it may turn out that Browne himself was recruited by one or more of the other Defendants to leave Ascencea and join PPG. If proven, such recruitment could constitute a breach of the recruiting-Defendant's non-compete agreement with Ascencea.

7

Agreement expressly allows Browne to "pursue other endeavors and . . . engage [his] services in the field of mortgage insurance and related products."[3] Even if Browne is engaged in selling an insurance product identical to that which he was selling for Ascencea, such practice does not constitute a breach because the insurance product is not, by the express terms of the Agreement, considered confidential information. Under the Agreement, Confidential Information is defined as Acencea's "business methods, leads, lead system, telephone script, marketing presentations and other materials developed in connection with [Browne's] relationship with [Ascencea]. Even if Ascencea argued, which it does not, that the insurance product falls under the catch-all umbrella language contained in the confidentiality provision ("other materials developed in connection with [Browne's] relationship with [Ascencea]"), it is doubtful that the insurance product could be considered confidential because every term, component, and feature of the product is widely available, having been distributed to everyone who has ever purchased a policy from Ascencea. Thus, even when viewed in the light most favorable to Ascencea, the facts do not support a Breach of Contract claim.

  The remaining claims are merely adjuncts to Ascencea's contract claim, or they are requests for specific remedies for the alleged breach. Ascencea has not attempted to defend those counts as separate claims nor has it spelled them out in detail. Thus, the court finds it unnecessary to analyze those claims. Browne's Motion for Summary Judgment will be granted and Ascencea's claims against Browne will be dismissed with prejudice.

---

[3] The same may not be true for the other Defendants. If any of the other Defendants' non-compete agreements expressly prohibit them from working for a competing company or engaging in the business of selling mortgage protection insurance, their work for PPG could constitute a breach of contract.

## III. CONCLUSION

For the reasons set forth above, Browne's motion for Summary Judgment will be granted and Ascencea's claims against Browne will be dismissed with prejudice.

The Court will enter an Order implementing this Opinion.

                                                     _____
                                                     DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: October 25th, 2010